[No. A063469. First Dist., Div. Three. July 27, 1995.]

UNION OIL COMPANY OF CALIFORNIA, Plaintiff and Appellant, v. INTERNATIONAL INSURANCE COMPANY, Defendant and Respondent.

**COUNSEL**

White & Case, Francis J. MacLaughlin, Alice A. Seebach and Ronald K. Giller for Plaintiff and Appellant.

Musick, Peeler & Garrett, Jon C. Cederberg, Susan J. Field and Lawrence A. Tabb for Defendant and Respondent.

Elliot L. Bien, Wiley, Rein & Fielding, Laura A. Foggan, John E. Barry and J. Stephen Zielezienski as Amici Curiae on behalf of Defendant and Respondent.

**OPINION**

**CORRIGAN, J.—**

*Introduction*

This case requires us to decide whether an insured party's liability for the cost of pollution remediation, excluded from the property damage clause of its liability policy, is nonetheless covered under the policy's "personal injury" clause. We conclude it is not and affirm the judgment.

*Background*

### I.  *The Gasoline Leak*

Sometime after December 1981, an underground gasoline tank at a gas station owned by Union Oil Company of California (Union Oil) began to

leak. By the time the leak was discovered and stopped in early 1984, over 14,000 gallons of gasoline had escaped into the soil and groundwater and contaminated neighboring properties. Union Oil began a cleanup operation, which continues today. The cost of remediation had exceeded $2,165,000 by the time of trial in 1993.

## II. *The Insurance Policies*

As Union Oil began the cleanup, it made demands against Larry Ngow, the lessee of the gas station, and against his insurer, Fireman's Fund Insurance Company (Fireman's Fund). Union Oil was an additional insured on the Fireman's Fund policy, which it had required Ngow to obtain as a condition of the gas station lease. After a brief episode of litigation, Fireman's Fund exhausted its $1 million policy limits by paying Union Oil approximately $985,000 to settle all claims against Ngow and the insurance company.[1]

Union Oil had a comprehensive general liability policy with Continental Insurance Company (Continental) and an excess coverage policy with International Insurance Company (International) that adopted the terms and conditions of the Continental policy.[2] The International policy covered property damage and personal injury, but expressly excluded liability for "*bodily injury or property damage* arising out of the discharge, dispersal, release or escape of smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids or gases, waste materials or other irritants, contaminants or pollutants into or upon land, the atmosphere or any water course or body of water, *but this exclusion does not apply if such discharge, dispersal, release or escape is sudden and accidental.*" (Italics added.) The policy defined "property damage" as "damage to or loss or destruction of tangible property, damage to tangible property caused by or arising out of the creation or maintenance of a public or private nuisance, loss of use of tangible property and indirect or consequential damage to tangible property."

Also under "definitions," the policy provided that "The words 'personal injury' includes [*sic*], but shall not be limited to bodily injury, mental

---

[1]Fireman's Fund had previously paid approximately $15,000 to another claimant against Ngow for damages caused by the gasoline leak.

[2]The Continental policy was considered a "fronting policy" because, through an agreement reached between Continental and Union Oil, Union Oil's deductible was equal to the limits of liability of the Continental policy. Union Oil made no claim under the Continental policy and did not name Continental as a defendant in this action. International, however, sued Continental as a cross-defendant, seeking a judicial declaration that Continental was liable on the risk. Continental moved for and obtained summary judgment on International's cross-complaint. The parties have stipulated to stay International's appeal from that judgment pending resolution of this appeal.

anguish, mental injury, physical impairment, fright, libel, mental impairment, slander, defamation of character, false arrest, malicious prosecution, willful or malicious detention, restraint, imprisonment, invasion of privacy, *violation of personal rights*, discrimination, wrongful eviction, *wrongful entry*, humiliation, loss of reputation, disparagement of property." (Italics added.)

## III. *The Litigation*

After it settled with Fireman's Fund, Union Oil made a claim against International for coverage of its cleanup expenses in excess of the International policy's $1 million deductible or "self-insured retention." International denied the claim, and this lawsuit followed.

The trial of Union Oil's claim against International focused on three contentions: (1) that the contamination constituted "property damage" within the meaning of the policy and was the result of a "sudden and accidental" discharge so that coverage was not excluded under the pollution exclusion; (2) that the contamination was covered under the personal injury provision of the policy, to which the pollution exclusion did not apply; and (3) that, because Union Oil had no coverage under the Continental "fronting" policy, International's coverage would commence once the $1 million Fireman's Fund policy was exhausted.

The trial court ruled on the third question as a matter of law, determining that International did not become responsible for Union Oil's losses until the $1 million Continental policy, as well as the $1 million Fireman's Fund policy, was exhausted. Questions of whether the leak was "sudden and accidental" within the meaning of the pollution exclusion and whether the contamination fell within the personal injury provision were submitted to the jury.

The jury returned a special verdict finding that: (1) the discharge of pollutants was not "sudden and accidental" for purposes of the exclusion; and (2) the personal injury coverage did not apply to Union Oil's claim. Based on the special verdict, the trial court dismissed Union Oil's remaining claims for breach of fiduciary duty and breach of the covenant of good faith and fair dealing, and entered judgment in favor of International. Following the denial of its motions for new trial and judgment notwithstanding the verdict, Union Oil timely appealed.

## *Discussion*

Union Oil argues we must reverse the judgment because the personal injury provision in the International policy covers its cleanup costs as a

matter of law. Alternatively, it asserts this court should remand for a new trial because the court below gave erroneous instructions concerning the scope of the personal injury coverage. Finally, Union Oil argues the trial court erred in ruling the International policy would take effect only after the Continental policy limits were exhausted. We turn first to the policy language at issue.

## I. *Rules Governing the Interpretation of Insurance Policies*

■ The rules for interpreting insurance contracts are well settled. It is fundamental that an insurance policy, like any contract, is to be interpreted to effectuate the mutual intent of the parties. (*Bank of the West* v. *Superior Court* (1992) 2 Cal.4th 1254, 1264 [10 Cal.Rptr.2d 538, 833 P.2d 545]; *AIU Ins. Co.* v. *Superior Court* (1990) 51 Cal.3d 807, 821 [274 Cal.Rptr. 820, 799 P.2d 1253].) Where possible, our interpretation is governed by the clear and explicit meaning of the policy's written provisions, interpreted in their ordinary and popular sense unless used by the parties in a technical sense or special meaning is given to them by usage. (*AIU Ins. Co.*, *supra*, at p. 822.) If, on the other hand, a policy term is ambiguous, we must give it the meaning the insurer believed the insured party understood it to have at the time of formation. Only then, if the ambiguity survives the application of this rule, do we resolve it against the insurer. (*Bank of the West*, *supra*, at pp. 1264-1265.)

■ A policy term is ambiguous only if it is susceptible to two or more interpretations that are (1) reasonable and (2) not based on a strained interpretation of the policy language. (*Shell Oil Co.* v. *Winterthur Swiss Ins. Co.* (1993) 12 Cal.App.4th 715, 737 [15 Cal.Rptr.2d 815]; *Producers Dairy Delivery Co.* v. *Sentry Ins. Co.* (1986) 41 Cal.3d 903, 912 [226 Cal.Rptr. 558, 718 P.2d 920].) "[A] court that is faced with an argument for coverage based on assertedly ambiguous policy language must first attempt to determine whether coverage is consistent with the insured's objectively reasonable expectations. In so doing, the court must interpret the language in context, with regard to its intended function in the policy. [Citation.] This is because '*language in a contract* must be construed in the context of that instrument as a whole, and in the circumstances of that case, and *cannot be found to be ambiguous in the abstract.*' [Citations.]" (*Bank of the West* v. *Superior Court*, *supra*, 2 Cal.4th at p. 1265, italics in original; *Shell Oil Co.*, *supra*, at p. 737.) In this regard, an interpretation that gives effect to every clause is preferred over one that would render other policy terms meaningless. (*Titan Corp.* v. *Aetna Casualty & Surety Co.* (1994) 22 Cal.App.4th 457, 474 [27 Cal.Rptr.2d 476]; see *New York Life Ins. Co.* v. *Hollender* (1951) 38 Cal.2d 73, 81-82 [237 P.2d 510].)

Whether a clause is ambiguous and whether an insured has an objectively reasonable expectation of coverage under the policy are questions of law subject to independent review on appeal. (*Titan Corp.* v. *Aetna Casualty & Surety Co., supra,* 22 Cal.App.4th at p. 469.)

## II. *The Personal Injury Provision Does Not Cover Union Oil's Liability for Pollution-caused Property Damage*

■ Union Oil does not take issue with the jury's determination that the gasoline leak was not "sudden and accidental" within the meaning of the exception to the pollution exclusion and, hence, that the pollution exclusion bars its claim to coverage under the *property damage* clause of the policy. Instead, Union Oil argues that "wrongful entry" as used in the *personal injury* provision, while not itself a defined tort, represents a "generic category of torts that includes trespass and waste." Therefore, it maintains, we must construe the policy's personal injury coverage, which is not subject to the pollution exclusion, to include the trespass or waste allegedly caused when Union Oil's gasoline migrated into neighboring properties.[3] In a similar vein, Union Oil contends the gasoline contamination also constitutes a covered "violation of personal rights" within the meaning of the personal injury provision because the contamination interfered with "the personal right of an owner to use, occupy, and enjoy his property." Our task is to determine, in the context of the policy as a whole, whether an insured would have an objectively reasonable expectation of such coverage. (*Bank of the West* v. *Superior Court, supra,* 2 Cal.4th at p. 1265; *Titan Corp.* v. *Aetna Casualty & Surety Co., supra,* 22 Cal.App.4th at p. 476.)

The Fourth District recently confronted this issue in *Titan Corp.* v. *Aetna Casualty & Surety Co., supra,* 22 Cal.App.4th 457 (*Titan*). The insured in

---

[3]International apparently does not dispute Union Oil's assertion that the pollution exclusion is inapplicable to the personal injury coverage, observing rather that "it is not necessary to create an exclusion for a category of damages 'that would not embrace the excluded item in the first place. What is plainly not *included* within the coverage is by definition *excluded.*' [Citation.]"

In its reply brief, Union Oil argues at length that International's alleged intent that the pollution exclusion would not apply in cases such as this is evidenced by the fact that International offers a *different* pollution exclusion, not purchased by Union Oil, that expressly applies to personal injury as well as to property damage and bodily injury. Notably absent from Union Oil's briefs, however, is any indication that this other policy, of which we previously agreed to take judicial notice, was presented to, passed on, or considered by the trier of fact. Accordingly, it may not be raised for the first time on appeal. (*Doers* v. *Golden Gate Bridge etc. Dist.* (1979) 23 Cal.3d 180, 184, fn. 1 [151 Cal.Rptr. 837, 588 P.2d 1261]; *Amato* v. *Mercury Casualty Co.* (1993) 18 Cal.App.4th 1784, 1794 [23 Cal.Rptr.2d 73]; *Oldenkott* v. *American Electric, Inc.* (1971) 14 Cal.App.3d 198, 207 [92 Cal.Rptr. 127].)

*Titan* sought coverage for costs expended to clean up environmental contamination at its plant. The insurer rejected the claim on the basis of a pollution exclusion similar to that in the International policy. (*Id.* at p. 465.) Titan claimed it was nonetheless entitled to indemnification under its personal injury coverage, which applied to injuries arising out of, among other things, the " 'wrongful entry or eviction or other invasion of the right of private occupancy.' " (*Id.* at p. 473.) The trial court agreed, concluding that " 'the expenses constitute sums which Titan is obligated to pay because of "personal injury," and fall within that coverage as well since they were incurred because of a wrongful entry or eviction or invasion of the right of private occupancy.' " (*Ibid.*)

The appellate court reversed. Applying the familiar rules governing interpretation of insurance policies, the court reasoned that the personal injury coverage did not encompass indemnification for the costs of remediating soil and groundwater contamination. "We interpret contracts (including insurance policies) as a whole, with each clause lending meaning to the others. [Citation.] Importantly, we should interpret contractual language in a manner which gives force and effect to every clause rather than to one which renders clauses nugatory. [Citation.] The policy here unambiguously declares it will not pay for either bodily injury or property damage when the cause of such injury or damage is pollution. Under the interpretation urged by Titan and adopted by the trial court, *that exclusion will never operate*, because the pollution exclusion's 'property damage' provisions are relevant *only* to eliminate liability for third party property injury. However, under the trial court's interpretation, such injury would simply be relabeled as an 'other invasion of the right of private occupancy,' rendering the pollution exclusion a dead appendage to the policy."[4] (*Titan, supra,* 22 Cal.App.4th at pp. 473-474, italics in original.) Following holdings from a number of other jurisdictions, the *Titan* court concluded the coverage afforded by the personal injury portion of the policy was limited to "injuries personal to the occupant, as distinct from the damage to the realty." (*Id.* at pp. 474-475.) We agree.

Union Oil urges us not to follow *Titan*, which it argues is both distinguishable and poorly reasoned. Its arguments are not persuasive. First, while the personal injury provision at issue in *Titan* is not identical to International's, i.e., it adds to "wrongful entry" and "eviction" the phrase "or other invasion of the right of private occupancy," it is, if anything, *broader* than the provision concerned here. Accordingly, the difference in wording does not render *Titan*'s analysis inapposite.

---

[4]This reasoning, of course, applies equally to Union Oil's further position that the property damage was a covered "violation of personal rights" personal injury.

Nor are we persuaded that the *Titan* court's analysis was faulty. Union Oil disputes *Titan*'s conclusion that interpreting the personal injury provision to afford coverage in this context would render the pollution exclusion a "dead appendage," arguing the exclusion "will still continue to apply to offenses not included in the personal injury coverage." Under this view, the pollution exclusion will still defeat coverage if pollution that causes property damage does not also cause a "wrongful entry" or "violation of personal rights" personal injury. According to Union Oil, however, the policy's personal injury coverage applies *whenever* a pollutant invades a third party's property. This is precisely the type of damage the pollution exclusion unambiguously excepts from coverage.[5]

Union Oil also argues the *Titan* court improperly "rewrote" the policy at issue by holding the pollution exclusion applied to personal injury as well as to property damage and bodily injury. This mischaracterizes *Titan*'s holding. The question was not whether the pollution exclusion applied to the personal injury coverage, but whether the personal injury coverage for injuries arising out of "wrongful entry or eviction or invasion of the right of private occupancy" encompassed the cost of remediating property damage caused by the release and dispersal of pollutants. The court concluded, correctly in our view, that it did not. In no way did the court's analysis or conclusion depart from the standard rules for interpreting insurance contracts.

Other courts have reached the same conclusion. In *County of Columbia* v. *Continental Ins.* (1994) 83 N.Y.2d 618 [612 N.Y.S.2d 345, 634 N.E.2d 946], New York's highest court held that extending personal injury coverage to a claim for groundwater contamination would not give logical effect to the policy language as a whole: "Under the construction of the policies urged by plaintiff, those pollution-related claims that are eliminated from coverage by the pollution exclusion would nevertheless be included in the personal injury endorsement. However, such construction does not give full force and effect to the words in the policy. An insurance contract should not be read so that

[5]Union Oil cites several cases involving injuries *not* caused by the release of pollutants to argue that "[p]roperty damage or bodily injury can occur without personal injury" and, hence, that the pollution exclusion would survive to preclude coverage in such cases. (*Waranch* v. *Gulf Insurance Co.* (1990) 218 Cal.App.3d 356 [266 Cal.Rptr. 827] [wrongful repossession of automobile]; *Fragomeno* v. *Insurance Co. of the West* (1989) 207 Cal.App.3d 822 [255 Cal.Rptr. 111] [unlawful detainer]; *Nichols* v. *Great American Ins. Companies* (1985) 169 Cal.App.3d 766 [215 Cal.Rptr. 416] [interception of pay television signals].) The argument misses the point. The question is whether the pollution exclusion retains any force and effect if, as Union Oil would have it, property damage *caused by the release and migration of pollutants* always constitutes a covered "personal injury." That some *other* types of property damage or bodily injury not caused by pollutants might not fall within the personal injury coverage is immaterial.

some provisions are rendered meaningless [citation]. It would be illogical to conclude that the claims fail because of the pollution exclusion while also concluding that the insurer wrote a personal injury endorsement to cover the same eventuality. Thus, we conclude that the coverage provided for in the personal injury endorsement is not available to injuries arising from pollution-generated property damage." (634 N.E.2d at p. 950; accord, *East Quincy Services Dist.* v. *Continental Ins. Co.* (E.D.Cal. 1994) 864 F.Supp. 976, 977, 980-982 [no duty to defend pollution claims under "wrongful entry" personal injury coverage]; *Staefa Control-System* v. *St. Paul Fire & Marine* (N.D.Cal. 1994) 847 F.Supp. 1460, 1473-1474, mod. (N.D.Cal. 1994) 875 F.Supp. 656 [following *Titan*]; *O'Brien Energy* v. *American Employers'* (1993) 427 Pa.Super. 456 [629 A.2d 957, 963-964] [interpreting "wrongful entry" clause to afford coverage for methane gas contamination would emasculate pollution exclusion and constitute "unwarranted straining to reach a result different than that intended by the parties"]; *Gregory* v. *Tennessee Gas Pipeline Co.* (5th Cir. 1991) 948 F.2d 203, 208-209 [extending personal injury coverage to claims for "PCB" contamination would negate pollution exclusion].)

No California case has found a duty to indemnify in these circumstances.[6] Union Oil's reliance on *Fibreboard Corp.* v. *Hartford Accident & Indemnity Co.* (1993) 16 Cal.App.4th 492 [20 Cal.Rptr.2d 376] is misplaced. There, the insured sought indemnification under its personal injury coverage for, inter alia, trespass claims asserted against it as a result of its sale of asbestos-containing products. Although the court stated in dictum that "wrongful entry" could include " 'simple trespass' " not requiring an intent to dispossess the occupant, it found no actionable trespass on the facts before it. (*Id.* at pp. 511-512.) *Fibreboard* did not address the applicability of a pollution exclusion and did not consider whether property damage caused by the release of pollutants may qualify as a covered "wrongful entry" under a policy that specifically excludes such coverage under its property damage clause.

Union Oil's citation to *Hirschberg* v. *Lumbermens Mut. Cas.* (N.D.Cal. 1992) 798 F.Supp. 600 is also unavailing. The trial court there entered an order for partial summary judgment only on the issue of the duty to defend, a duty which is broader than the duty to indemnify at issue here. (*Id.* at p.

---

[6]Although one unpublished federal district court opinion found coverage under California law prior to *Titan* (*Hughes Aircraft Co.* v. *Hartford Accident and Indemnity Co.* (C.D.Cal., Jan. 18, 1994) Mealey's Litigation Rep. Ins., vol. 8, No. 16, Feb. 22, 1994, pp. A-3 to A-8), that court later reversed itself upon reconsideration in light of *Titan.* (*Hughes Aircraft Co.* v. *Hartford Accident and Indemnity Co.* (C.D.Cal., Mar. 28, 1994) Mealey's Litigation Rep. Ins., vol. 8, No. 23, April 19, 1994, pp. D-4 to D-6.)

602; *Gray* v. *Zurich Insurance Co.* (1966) 65 Cal.2d 263, 275, 276-277 [54 Cal.Rptr. 104, 419 P.2d 168].) Construing a personal injury provision that included coverage for " 'wrongful entry or eviction or other invasion of the right of private occupancy . . . ,' " the district court found sufficient ambiguity in the "other invasion" language to raise the possibility of coverage necessary to invoke the duty to defend. (*Hirschberg, supra*, at p. 604.) The policy at issue here, in contrast, does not contain the "other invasion" language found potentially applicable in *Hirschberg*. More important, *Hirschberg* fails to address the fact that its reading of the personal injury coverage would, at least if extended to a duty to indemnify, nullify the policy's unambiguous pollution exclusion. The point is a critical one. We therefore join *Titan* in declining to follow this and the handful of other federal courts that have found a potential for coverage in like circumstances. (*Titan, supra*, 22 Cal.App.4th at pp. 475-476; see *Pipefitters Welfare Educ. Fund* v. *Westchester Fire* (7th Cir. 1992) 976 F.2d 1037, 1041-1042 [duty to defend under " 'other invasion of the right to private occupancy' " provision]; *Titan Holdings Syndicate* v. *City of Keene, N.H.* (1st Cir. 1990) 898 F.2d 265, 272-273 [same]; see also *Scottish Guarantee Ins. Co., Ltd.* v. *Dwyer* (7th Cir. 1994) 19 F.3d 307 [duty to defend under " 'wrongful entry' " provision].)

*Conclusion*

In construing insurance policies, courts generally interpret coverage clauses broadly and exclusions narrowly to protect the insured's objectively reasonable expectations. (*Shell Oil Co.* v. *Winterthur Swiss Ins. Co., supra*, 12 Cal.App.4th at p. 737.) This does not mean, however, that we may strain to find coverage where none was reasonably intended. As the *Titan* court put it, ". . . we do not believe it is objectively reasonable for an insured to expect 'personal injury' to mean 'property damage,' or to expect contamination of groundwater to harm either a 'private' right or an 'occupancy' right, or to expect that a blanket pollution exclusion will never operate." (*Titan, supra*, 22 Cal.App.4th at p. 476.)

In light of our conclusion that the personal injury provision afforded no coverage for the pollution-caused property damage, we do not reach Union Oil's further contentions that (1) the court erred in instructing the jury on the scope of the personal injury coverage and (2) International's obligation to indemnify commenced once the Fireman's Fund policy limits were exhausted.

*Disposition*

The judgment is affirmed.

Chin, P. J., and Parrilli, J., concurred.

Appellant's petition for review by the Supreme Court was denied October 18, 1995.