[No. D044724. Fourth Dist., Div. One. Nov. 18, 2005.]

CYNTHIA DAVIS et al., Plaintiffs and Appellants, v.
FARMERS INSURANCE GROUP, Defendant and Respondent.

**COUNSEL**

John K. Saur for Plaintiffs and Appellants.

Horvitz & Levy, Robert H. Wright, Jason R. Litt, Hollins Schechter and Gina M. Linthicum for Defendant and Respondent.

**OPINION**

**McINTYRE, J.**—In this appeal we address a homeowner's insurance policy exclusion that precludes coverage for bodily injury or property damage arising out of the sale or transfer of real property, including known or unknown property defects. Read as a whole, this exclusion provides that after real property is sold or transferred, claims for bodily injury or property damage resulting from certain known or unknown defects in the real property are not covered. Thus, we conclude that this exclusion precluded coverage for claims brought against the insureds, sellers of certain real property, by the purchasers of the property and affirm the judgment in favor of the insurer because it had no duty to defend or indemnify the sellers in the underlying lawsuit.

## FACTUAL AND PROCEDURAL BACKGROUND

In 1997, Cynthia and Daniel Davis purchased a course of construction policy from Fire Insurance Exchange (Fire) for a home they were building. After completion of the construction, the course of construction policy converted into a homeowner's policy (the first policy). After living in the home for about nine months, the Davises sold it to Rick and Kristin Engebretsen in June 1998 and Fire cancelled the first policy on August 3, 1998. The Davises bought another home and insured it with a second homeowner's policy purchased from Fire (the second policy).

In July 2001, the Engebretsens sued the Davises and a real property inspection company alleging 10 causes of action, including negligence, fraud and breach of contract. (*Engebretsen v. Davis* (Super. Ct. San Diego County, 2001, No. GIC782599); the underlying action.) The underlying complaint alleged that Daniel Davis, the general contractor of the home, was in the

business of home construction and that the Davises knew or should have known that the home was improperly constructed, but failed to inform the Engebretsens. The improper design and construction of the home allegedly resulted in damage to the property and injury to the Engebretsens. The complaint further alleged that the defects were latent and not apparent by reasonable inspection until within three years prior to the filing of this action. Among other things, the Engebretsens alleged that improper drainage, soil preparation and landscaping caused mold to grow under the home and contaminated the air. The complaint sets forth no dates as to when the damages occurred. The Engebretsens also alleged personal injury from high concentrations of fungi, including sinus and respiratory infections, and that they incurred medical expenses to treat these conditions.

The Davises tendered defense of the underlying action to Fire under both their first and second homeowner's policies, but Fire denied their request for a defense or coverage under either policy. The Davises filed the instant action against Fire alleging causes of action for breach of contract and breach of the implied covenant of good faith and fair dealing. The Davises filed a motion for summary adjudication asking the trial court to conclude that Fire owed a duty to defend the underlying action and that it breached that duty. Fire moved for summary judgment or in the alternative, summary adjudication, arguing that all causes of action against it lacked merit because there was no potential for coverage under either policy. The trial court denied the Davises' motion, granted Fire's summary judgment motion and entered judgment in favor of Fire. The Davises timely appealed.

## DISCUSSION

### I. *Standard of Review*

We review the trial court's decision granting summary judgment de novo. (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 860 [107 Cal.Rptr.2d 841, 24 P.3d 493] (*Aguilar*).) After identifying the issues framed by the pleadings, we determine whether the moving party has established facts justifying judgment in its favor. If the moving party has carried its initial burden, we then decide whether the opposing party has demonstrated the existence of a triable, material fact issue. (*Bono v. Clark* (2002) 103 Cal.App.4th 1409, 1432 [128 Cal.Rptr.2d 31].) We must strictly construe the moving party's evidence and liberally construe the opposing party's evidence (*Binder v. Aetna Life Ins. Co.* (1999) 75 Cal.App.4th 832, 838–839 [89 Cal.Rptr.2d 540]) and we may not weigh the evidence or conflicting inferences. (*Aguilar, supra,* 25 Cal.4th at p. 856; Code Civ. Proc., § 437c, subd. (c).)

## II. *Applicable Insurance Law Principles*

■ Interpretation of an insurance policy presents a question of law governed by the general rules of contract interpretation. (*Waller v. Truck Ins. Exchange, Inc.* (1995) 11 Cal.4th 1, 18 [44 Cal.Rptr.2d 370, 900 P.2d 619] (*Waller*).) We must give effect to the intent of the parties when they formed the contract and, if possible, infer this intent solely from the written provisions of the contract. (*E.M.M.I., Inc. v. Zurich American Ins. Co.* (2004) 32 Cal.4th 465, 470 [9 Cal.Rptr.3d 701, 84 P.3d 385].) In so doing, we must "look first to the language of the [insurance policy] in order to ascertain its plain meaning or the meaning a layperson would ordinarily attach to it." (*Waller, supra*, 11 Cal.4th at p. 18.) The language of the policy must be read in the context of the instrument as a whole under the circumstances of the case and a policy provision will be considered ambiguous when it is capable of two or more reasonable constructions. (*Id.* at pp. 18–19.) If a policy provision is ambiguous, we resolve the ambiguity in the insureds' favor, consistent with the insureds' reasonable expectations. (*Cunningham v. Universal Underwriters* (2002) 98 Cal.App.4th 1141, 1149 [120 Cal.Rptr.2d 162].)

■ An insurer must defend any action that seeks damages potentially within the coverage of the policy; however, no duty to defend exists when the third party complaint " 'can by no conceivable theory raise a single issue [that] could bring it within the policy coverage.' " (*Montrose Chemical Corp. v. Superior Court* (1993) 6 Cal.4th 287, 299–300 [24 Cal.Rptr.2d 467, 861 P.2d 1153], quoting *Gray v. Zurich Insurance Co.* (1966) 65 Cal.2d 263, 276, fn. 15 [54 Cal.Rptr. 104, 419 P.2d 168] (*Gray*), italics omitted.) Whether a third party action asserts a potentially covered claim under the policy triggering the duty to defend requires us to interpret the language of the insuring agreement and presents a question of law. (*Alex Robertson Co. v. Imperial Casualty & Indemnity Co.* (1992) 8 Cal.App.4th 338, 342–343 [10 Cal.Rptr.2d 165]; *Union Oil Co. v. International Ins. Co.* (1995) 37 Cal.App.4th 930, 936 [44 Cal.Rptr.2d 4].) An insurer's duty to defend turns on the facts alleged in the underlying complaint or available to the insurer from extrinsic sources at the time the claim is made. (*Montrose Chemical Corp. v. Superior Court, supra*, 6 Cal.4th at p. 295; *Gray, supra*, 65 Cal.2d at p. 276.) The insured has the burden of showing that the claim falls within the scope of coverage and the insurer has the burden of proving that an otherwise covered claim is barred by a policy exclusion. (*Travelers Casualty & Surety Co. v. Superior Court* (1998) 63 Cal.App.4th 1440, 1453 [75 Cal.Rptr.2d 54].) "[I]n an action [in which] none of the claims is even potentially covered, the insurer does not have a duty to defend." (*Buss v. Superior Court* (1997) 16 Cal.4th 35, 47 [65 Cal.Rptr.2d 366, 939 P.2d 766].)

III. *Analysis*

A. *Policy Coverage Provisions*

■ The first step in any insurance coverage dispute is to determine whether the insuring provisions of the policy afforded coverage for the alleged losses. The policies at issue are typical homeowner's policies, divided into two separate and distinct parts: (1) first party coverage whereby the insurer agrees to indemnify its insured for specific losses to the designated property; and (2) personal liability insurance to the named insureds against third party claims against them. (See *Garvey v. State Farm Fire & Casualty Co.* (1989) 48 Cal.3d 395, 399 & fn. 2 [257 Cal.Rptr. 292, 770 P.2d 704].) This action does not involve first party coverage; rather, it involves the personal liability portion of the policies, which provides liability coverage to the insureds, limited only by the specific exclusionary provisions of each policy. Because the personal liability portion of each policy is substantially the same, our coverage discussion applies to both policies.

The coverage clause of the "Personal Liability" section of the first policy provides in part:

"Coverage E—Personal Liability

"We [will] pay those damages which an insured becomes legally obligated to pay because of bodily injury or property damage resulting from an occurrence to which this coverage applies.

"At our expense and with attorneys of our choice, we will defend an insured against any covered claim or suit. . . ." (Boldface omitted.)

An "occurrence" is defined as "an accident including exposure to conditions which results during the policy period in bodily injury or property damage. Repeated or continuous exposure to the same general conditions is considered to be one occurrence. [¶] Occurrence does not include accidents or events which take place during the policy period which do not result in bodily injury or property damage until after the policy period." "Bodily injury" is defined as "bodily harm, sickness or disease, including care, loss of services and death . . . ." The second policy similarly defined personal liability, occurrence and bodily injury.

The instant policies are "occurrence" policies that provide " 'coverage for any acts or omissions that arise during the policy period even though the claim is made after the policy has expired.' " (*Pacific Employers Ins. Co. v. Superior Court* (1990) 221 Cal.App.3d 1348, 1356 [270 Cal.Rptr. 779],

quoting *Chamberlin v. Smith* (1977) 72 Cal.App.3d 835, 845, fn. 5 [140 Cal.Rptr. 493].) In contrast, a "claims-made" policy, " 'is one whereby the carrier agrees to assume liability for any errors, including those made prior to the inception of the policy as long as a claim is made during the policy period.' " (*Pacific Employers Ins. Co. v. Superior Court, supra,* 221 Cal.App.3d at pp. 1356–1357, quoting *Chamberlin v. Smith, supra,* 72 Cal.App.3d at p. 845, fn. 5.) Because an occurrence-based policy provides coverage for injury or damage that may not be discovered or manifested until after expiration of the policy period, insurers charge higher premiums for such policies to offset their increased exposure. (*Montrose Chemical Corp. v. Admiral Ins. Co.* (1995) 10 Cal.4th 645, 688–689 [42 Cal.Rptr.2d 324, 913 P.2d 878].)

Fire argues that the policies cannot be read to provide an indefinite warranty on construction to all future owners. We agree, as coverage under the policies is specifically limited to damage occurring during the policy periods, irrespective of when the claim is made. Because the underlying complaint alleged property damage and bodily injury that potentially occurred during the term of the policies, the policies provided coverage unless Fire can show that a specific exclusion precluded coverage.

B. *Policy Exclusions*

Fire contends that a number of exclusions in each policy applied to preclude coverage. We focus on the arising out of the sale exclusion as we find it dispositive.

Both policies excluded coverage for bodily injury or property damage "aris[ing] out of the sale or transfer of real property including but not limited to the following: [¶] a. known or unknown property or structural defects; [¶] b. known or hidden defects in the plumbing, heating, and electrical systems[;] [¶] c. known or unknown soil conditions or drainage problems; [¶] d. concealment or misrepresentation of any known defects."

It is undisputed that the Davises sold their home to the Engebretsens, who alleged that they suffered bodily injury and property damage as a result of the Davises' misrepresentations and numerous unknown structural defects in the home. The Davises admit that the Engebretsens' misrepresentation claims arose out of the sale of the home and that their policies provided no coverage for these claims; however, they assert that to the extent the Engebretsens alleged negligent construction, this construction occurred well before the sale and could not have arisen out of the sale. We disagree.

As used in various types of insurance provisions, the term "arising out of" links a factual situation with the event creating liability and does not

import any particular standard of causation or theory of liability into an insurance policy. (*Vitton Construction Co. v. Pacific Ins. Co.* (2003) 110 Cal.App.4th 762, 766–767 [2 Cal.Rptr.3d 1].) Rather, " ' " '[a]rising out of' are words of much broader significance than 'caused by.' They are ordinarily understood to mean 'originating from[,]' 'having its origin in,' 'growing out of' or 'flowing from' or in short, 'incident to, or having connection with' . . . ." ' " (*Fibreboard Corp. v. Hartford Accident & Indemnity Co.* (1993) 16 Cal.App.4th 492, 504 [20 Cal.Rptr.2d 376], quoting *Continental Cas. Co. v. City of Richmond* (9th Cir. 1985) 763 F.2d 1076, 1080.) Policy exclusions are also interpreted according to their plain meaning. (Civ. Code, § 1644; *Smith Kandal Real Estate v. Continental Casualty Co.* (1998) 67 Cal.App.4th 406, 419 [79 Cal.Rptr.2d 52] ["arising out of" clause in policy exclusion has "broader significance and connot[es] more than causation"].) Moreover, although we strictly construe policy exclusions against the insurer, "strict construction does not mean strained construction." (*Safeco Ins. Co. v. Gilstrap* (1983) 141 Cal.App.3d 524, 532–533 [190 Cal.Rptr. 425].)

Read as a whole, the arising out of the sale exclusion provides that after real property is sold or transferred, claims for bodily injury or property damage resulting from certain known or unknown defects in the real property are not covered. Here, the injuries that the Engebretsens allegedly suffered, for which the Davises sought coverage, arose out of known or unknown defects in the real property after the sale of the real property. Thus, the exclusion was drafted to encompass the very type of claims alleged against the Davises.

In contrast, the Davises' interpretation of this exclusion improperly focuses on the "aris[ing] out of" language while ignoring the latter part of the exclusion, which sets forth examples of the type of defects that it encompasses after a sale or transfer of the property. (*Smith Kandal Real Estate v. Continental Casualty Co., supra,* 67 Cal.App.4th at pp. 412, 419–420 [court decides scope of exclusion for claims "arising out of activities performed by or on behalf of" by focusing on the meaning of the phrase "activities performed by or on behalf of" rather than the clause "arising out of"], and other cases cited therein.) We do not believe that the plain meaning of the exclusion is reasonably susceptible to the Davises' interpretation because it renders the exclusion meaningless as to claims against an insured for property damage. We cannot envision how the act of selling or transferring property could ever "cause" property damage. Thus, although the exclusion is not a model of clarity, its intent is clear and unambiguous. (*Cunningham v. Universal Underwriters, supra,* 98 Cal.App.4th at p. 1149 [ambiguities are construed in favor of coverage].)

Because the arising out of the sale exclusion precluded coverage under both policies as a matter of law, Fire had no duty to defend or

indemnify the Davises and the trial court properly granted summary judgment in favor of Fire. In light of this conclusion, we do not consider whether the other exclusions argued by the parties apply.

## DISPOSITION

The judgment is affirmed. Respondent is entitled to its costs on appeal.

Benke, Acting P. J., and McDonald, J., concurred.

A petition for a rehearing was denied December 13, 2005, and appellants' petition for review by the Supreme Court was denied January 25, 2006, S139839. Chin, J., did not participate therein.