[No. B176080. Second Dist., Div. Three. Sept. 19, 2005.]

MIRPAD, LLC et al., Plaintiffs and Appellants, v.
CALIFORNIA INSURANCE GUARANTEE ASSOCIATION, Defendant
and Appellant.

## COUNSEL

Pircher, Nichols & Meeks and James Goldman for Plaintiffs and Appellants.

Black, Compean & Hall, Frederick G. Hall and Jacqueline L. Shulman for Defendant and Appellant.

## OPINION

**CROSKEY, J.**—In this appeal, we apply the rule that the plain meaning of insurance policy language may be established by considering such language in the context of the entire policy, even though, in other contexts, it might have a different meaning. The question presented by this case is the proper interpretation to be given to the "wrongful eviction" portion of the "personal injury" coverage provisions contained in a standard commercial general liability (CGL) policy. The defendant, appellant and cross-respondent, California Insurance Guarantee Association (CIGA), argues that due to the specific language of the policy there can be no coverage liability for a claim for wrongful eviction of an "organization" (in this case, a corporation), because coverage is only extended under the policy to a claim by a *natural* person. The plaintiffs, respondents and cross-appellants[1], on the other hand,

---

[1] The plaintiffs, respondents and cross-appellants are Mirpad, LLC, a California corporation (Mirpad), Douglas Allred Company, a California corporation (Allred), Douglas Allred, Ann Allred, David Allred and Susan Allred.

insist that it would be improper to read so narrowly the "personal injury" coverage provisions. They contend that there is coverage for a wrongful eviction claim whether it is brought against the insured by a "person" or an "organization." The trial court, on stipulated facts, sided with plaintiffs and entered judgment in their favor.

An examination of the policy demonstrates that when the word "person" is used in isolation elsewhere in the policy, it clearly means a *natural* person. Under long-settled principles of policy construction, which require us to consider disputed language in the context of the policy as a whole, it should be given the same meaning in the disputed clause before us. When the disputed language is so construed, its plain meaning is explicit, clear and unambiguous. Whatever contrary expectations of coverage Mirpad, as a commercial landlord, may have had, they could not have been objectively reasonable. Thus, we conclude that the trial court erred and the construction of the disputed policy language advocated by CIGA is correct. We will therefore reverse the judgment.

### *FACTUAL AND PROCEDURAL BACKGROUND*[2]

In December 1999, Mirpad purchased a commercial office building located at 10027 South 51st, Foothills Plaza, Phoenix, Arizona (the building). One of the tenants in the building was POS Systems, Inc., a corporation (POS), which had leased 39,000 square feet in the building (the premises).

After Mirpad purchased the building, it retained Allred to manage it. In April 2000, Allred notified POS that it was in default under the terms of its lease. Later in that month, Allred locked POS out of the premises. At about the same time, POS filed a chapter 7 petition in bankruptcy. One Anthony Mason was appointed as the bankruptcy trustee.

In December 2000, the trustee filed an adversary proceeding against the several plaintiffs, alleging multiple causes of action, including wrongful termination, breach of the lease and fraudulent transfer (i.e., wrongful lockout). In April 2001, a second lawsuit was filed against the plaintiffs. This was filed in the Arizona Superior Court (Maricopa County). The plaintiff in that action was one Ken MacDonald (the founder, president and chief executive officer of POS). His complaint concerned the same acts, facts and transactions alleged in the Mason action. There is no dispute that these two actions (collectively, the underlying actions) alleged injuries arising from, and damages and other relief for, an alleged wrongful eviction.

---

[2] There is no dispute as to the facts that we recite. The parties have either stipulated to them or they involve matters disclosed by the record as to which there is no contest.

At the time of POS's alleged eviction from the premises, both Mirpad and Allred were named insureds in a CGL policy issued by United Pacific Insurance Company (United Pacific) with a coverage limit of $1 million. The policy included coverage for "Personal Injury and Advertising Injury Liability." Pursuant to that coverage, United Pacific promised to "pay those sums to which this insurance applies, that the insured becomes legally obligated to pay as damages because of *personal injury* . . . ." (Italics added.) The policy defined the term "personal injury" as: ". . . injury other than bodily injury, arising out of one or more of the following offenses: [¶] (1) false arrest, detention or imprisonment; [¶] (2) malicious prosecution; [¶] (3) *wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of:* [¶] *(a) a room;* [¶] *(b) a dwelling; or* [¶] *(c) premises;* [¶] *that a person occupies by or on behalf of its*[3] *owner, landlord or lessor;* [¶] (4) oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services; or [¶] (5) oral or written publication of material that violates a person's right of privacy." (Italics added.)

Defense of the underlying actions was tendered to United Pacific. On October 3, 2001, prior to responding to that tender, United Pacific was declared insolvent by an order issued by the Insurance Commissioner of the Commonwealth of Pennsylvania.[4] As a result of such an order, United Pacific became an "insolvent insurer" within the meaning of Insurance Code section 1063.1. Tender of the defense to the underlying actions was therefore referred to CIGA.[5] On or about July 23, 2002, CIGA denied coverage and rejected the tender. Plaintiffs, at their own expense, defended the underlying actions, incurring defense costs in excess of $500,000.

---

[3] Clearly, the word "its" refers back to the words "room," "dwelling" and "premises," not to "person." (See *U.S. Fidelity and Guar. Co. v. Goodwin* (D.Me. 1996) 950 F.Supp. 24, 27.) Thus, the wrongful eviction must have been done or brought about "by or on behalf of" the owner, landlord or lessor of a room, dwelling or premises. This construction of the wrongful eviction provision is not disputed.

[4] The order of liquidation declared Reliance Insurance Company insolvent on October 3, 2001. United Pacific was a former subsidiary of Reliance which, prior to the order of liquidation, had been merged into its parent.

[5] Even though the operative events took place in Arizona, because Mirpad and Allred were California residents, it was appropriate that such defense be tendered to CIGA. (Ins. Code, § 1063.1, subd. (c)(1).)

On July 22, 2003, plaintiffs[6] filed this action for declaratory relief and for violation of Insurance Code, section 1063.2.[7] Plaintiffs sought a resolution of CIGA's claim that there was no coverage under the United Pacific policy and a judgment for damages, which they expressly limited to $500,000.[8] In their fact stipulation, the parties also included their respective contentions with regard to the issue of coverage. It is CIGA's position that plaintiffs' claims are not "covered claims" because the coverage under the policy issued by United Pacific for personal injury, arising out of a wrongful eviction from premises, applies only where the tenant allegedly wrongfully evicted was a "person" as opposed to an "organization." Plaintiffs, on the other hand, contend that coverage under the United Pacific policy, and the applicable provisions of the Insurance Code, does extend to an "organization." Therefore, it is argued, CIGA is obligated to pay for the fees and costs incurred by them in connection with the defense of the underlying actions and, in particular, "to reimburse [the plaintiffs] for such fees and costs that they have paid up to a maximum of $500,000."

On February 17, 2004, the parties filed competing motions for judgment on the pleadings based on the stipulation of facts and their respective positions, all as summarized, *ante*. The matter came on for hearing on March 15, 2004, and the trial court ruled in plaintiffs' favor, rejecting CIGA's arguments as to the lack of coverage under the United Pacific policy. The court characterized the dispute as "whether the policy covers organizations in the context of personal injuries for wrongful evictions." Without attempting to construe or interpret the relevant policy language with respect to the scope and meaning of the word "person," the trial court adopted as controlling the definition of

---

[6] We are not entirely clear as to the standing of the plaintiffs, other than Mirpad and Allred (who were two of the *named* insureds in the United Pacific policy), to bring this action against CIGA. We assume, for purposes of this opinion, that they claim to be officers or directors of Allred (although the complaint only alleges that Douglas and David Allred held such positions) and, as such (and when acting in such capacity), would have the status of insureds under the terms of the policy. In light of the decision we reach in the matter, however, the issue is not one with which we need to be concerned.

[7] Insurance Code, section 1063.2 obligates CIGA to "pay and discharge *covered claims*" of an insolvent insurer "and in connection therewith [to] furnish loss adjustment services and defenses of claimants *when required by policy provisions*." (Italics added.) " 'Covered claims' means the obligations of an insolvent insurer, including . . . [those] imposed by law *and within the coverage of an insurance policy of the insolvent insurer*." (Ins. Code, § 1063.1, subd. (c)(1), italics added.)

[8] Except for workers' compensation claims, the maximum liability payable by CIGA (with respect to a particular policy of an insolvent insurer) is $500,000. (Ins. Code, § 1063.1, subd. (c)(6) and (7).) In the stipulation of facts executed by the parties and submitted to the trial court, Mirpad agreed that its claim was limited to $500,000.

that word set out in Insurance Code section 19.[9] The court noted that the word "person" was not defined in the policy, but was "defined as a matter of state law."[10]

Thereafter, on April 21, 2004, the trial court entered judgment in plaintiffs' favor and awarded $500,000 in damages.[11] CIGA has prosecuted this timely appeal and the parties make the same contentions that they did in the trial court, as already discussed.[12]

---

[9] Insurance Code, section 19, defines the word "person" as "any person, association, organization, partnership, business trust, limited liability company, or corporation." We note, however, that section 19 is subject to the caveat in section 5 of the Insurance Code. That section provides that, "[u]nless the context otherwise requires, the general provisions hereinafter set forth [in sections 1 through 48] shall govern the *construction of this code.*" (Italics added.)

[10] The following is the full statement made by the trial court as a predicate to its ruling: "The dispute between the parties is whether the policy covers organizations in the context of personal injuries for wrongful evictions. [¶] In the United Pacific policy, the word 'persons' is used. And in the underlying action, it's alleged that the plaintiff wrongfully evicted this tenant P.O.S. Systems, Inc., and the eviction allegedly led to the bankruptcy of P.O.S. Systems, Inc., and a substantial damage claim. [¶] The policy at issue provided for personal injuries which included a claim of wrongful eviction and the term 'person' is not defined by the policy but is defined as a matter of state law. I have just adopted the definition referred to in Insurance Code section 19 which is that 'person' means a natural person or an association or an organization or a partnership or a business trust or a corporation. [¶] And I'm making the determination that in that context of the law, the word 'persons' includes organizations as a matter of law." The court concluded the hearing on the parties' motions by noting, "[n]ow you have something to get to the appellate court with."

[11] The judgment of the court provided, in relevant part, as follows: "(1) On Plaintiffs' First Cause of Action for declaratory relief, as alleged in their Verified Complaint filed herein on July 22, 2003 ('the Complaint'): The Court declares that: (a) Defendant was obligated to defend and indemnify Plaintiffs with respect to the claims alleged against Plaintiffs in *'In re: POS Systems, Inc., Debtor; Anthony Mason, Trustee v. Mirpad, L.L.C.,'* in the United States Bankruptcy Court for the District of Arizona, Case No. B00-04297 ECF SSC, Adv. No. 00-842, and in *'Ken MacDonald v. Mirpad, L.L.C., et al.'* in the Superior Court of Arizona, Maricopa County, No. CV 1001-007377 (both of which are hereinafter referred to as 'the Underlying Actions'); (b) Plaintiffs' claim against Defendant for reimbursement of fees and costs incurred by Plaintiffs in the Underlying Actions constitutes a 'covered claim' as that term is defined in California Insurance Code Section 1063.1(c)(1), and (c) Defendant is obligated to reimburse Plaintiffs for all legal fees and expenses incurred or paid by Plaintiffs in said actions subject to the limit contained in California Insurance Code Section 1063.1(c)(7); [¶] (2) On Plaintiffs' Second Cause of Action for violation of Ins. Code Section 1063.2, as alleged in the Complaint: Judgment is entered in favor of Plaintiffs and against Defendant in the amount of $500,000 . . . ."

[12] Subsequent to the trial court's ruling granting plaintiffs' motion for judgment on the pleadings, but prior to entry of the judgment thereon, the trial court denied plaintiffs' motion to have included in the judgment prejudgment interest under either Civil Code, section 3287, subdivision (a) or (b) or Civil Code, section 3289, subdivision (b). Plaintiffs have filed a cross-appeal seeking review of that ruling. In light of our conclusion that there was no coverage for the claims asserted in the underlying actions, we have no need to reach or discuss either plaintiff's entitlement to prejudgment interest or the proper rate of interest to be applied.

## DISCUSSION

1. *Standard of Review*

■ In light of the circumstance that this matter is presented to us upon a written stipulation of facts (also relied upon by the trial court), and involves only a pure question of law as to the proper interpretation of the relevant provisions in the United Pacific policy, we apply a de novo standard of review. (*Waller v. Truck Ins. Exchange, Inc.* (1995) 11 Cal.4th 1, 18 [44 Cal.Rptr.2d 370, 900 P.2d 619] (*Waller*).)

2. *CIGA Can Only Be Liable for a "Covered Claim"*

■ "CIGA was created by legislation in 1969 ([Ins. Code,] § 1063 et seq.) to establish a fund from which insureds could obtain financial and legal assistance in the event their insurers become insolvent, . . . [that is] 'to provide insurance against "loss arising from the failure of an insolvent insurer to discharge its obligations under its *insurance policies*." (Ins. Code, § 119.5.)' [Citations.]" (*Isaacson v. California Ins. Guarantee Assn.* (1988) 44 Cal.3d 775, 784 [244 Cal.Rptr. 655, 750 P.2d 297], italics added.)

CIGA is only liable for a " '[c]overed claim[]' " (Ins. Code, § 1063.2). A " '[c]overed claim[]' means the obligation[] of an insolvent insurer, including . . . [those] imposed by law *and within the coverage of an insurance policy of the insolvent insurer*." (Ins. Code, § 1063.1, subd. (c)(1), italics added.) ■ Thus, it seems clear that the claims asserted in the underlying actions can only be "covered claims" if they are "within the coverage" of United Pacific's policy. If, but for an insurer's insolvency, a claim would not have been within the coverage of the insurer's policy, such insolvency would not create any broader obligation for CIGA. In other words, CIGA's statutory obligations cannot be any greater than those of the insolvent insurer had it remained solvent. "[W]e conclude that the Legislature intended the phrase 'within the coverage of an insurance policy' in section 1063.1, subdivision (c)(1) to mean within the risks of loss protected against by an insurance policy. Thus, the reading of the pertinent portion of subdivision (c)(1) would be: the obligations of an insolvent insurer within the risks of loss protected against by an insurance policy of the insolvent insurer. We believe this reading is faithful to the legislative intent." (*Aloha Pacific, Inc. v. California Ins. Guarantee Assn.* (2000) 79 Cal.App.4th 297, 311 [93 Cal.Rptr.2d 148], fn. omitted.)

■ In this case, however, plaintiffs are seeking only to recover for costs of defense that they incurred in resisting the claims asserted in the underlying actions. They do not seek to recover any damages for CIGA's failure to

discharge a duty to indemnify. An insurer owes a duty to defend any claim for which there is a *potential* for coverage under the policy. (*Gray v. Zurich Insurance Co.* (1966) 65 Cal.2d 263, 275 [54 Cal.Rptr. 104, 419 P.2d 168]; *Wausau Underwriters Ins. Co. v. Unigard Security Ins. Co.* (1998) 68 Cal.App.4th 1030, 1036 [80 Cal.Rptr.2d 688].) In other words, the duty to defend arises whenever the lawsuit against the insured seeks damages on any theory that, if proved, would be covered by the policy. Thus, a defense is excused only when "the third party complaint can *by no conceivable theory raise a single issue* which could bring it within the policy coverage." (*Montrose Chemical Corp. v. Superior Court* (1993) 6 Cal.4th 287, 300 [24 Cal.Rptr.2d 467, 861 P.2d 1153], some italics omitted.) It is settled that "the insured need only show that the underlying claim *may* fall within policy coverage; the insurer must prove it *cannot.*" (*Id.* at p. 300.) Thus, an insurer may have a duty to defend even when it ultimately has *no* obligation to indemnify, either because no damages are awarded in the underlying action or because the actual judgment is for damages not covered by the policy. (*Borg v. Transamerica Ins. Co.* (1996) 47 Cal.App.4th 448, 454 [54 Cal.Rptr.2d 811].) If coverage depends on an unresolved dispute over a *factual* question, the very existence of that dispute would establish a possibility of coverage and thus a duty to defend. (*Horace Mann Ins. Co. v. Barbara B.* (1993) 4 Cal.4th 1076, 1085 [17 Cal.Rptr.2d 210, 846 P.2d 792].) However, "where [as here] [the] only potential for . . . [coverage] turns on resolution of [a] legal question, there is no duty to defend . . . ." (*Waller, supra*, 11 Cal.4th at pp. 25–26; see *A-Mark Financial Corp. v. CIGNA Property & Casualty Companies* (1995) 34 Cal.App.4th 1179, 1192 [40 Cal.Rptr.2d 808]), unless and until the coverage issue is resolved in favor of the insured. (See Croskey et al., Cal. Practice Guide: Insurance Litigation (The Rutter Group 2004) ¶ 7:529.) As the Supreme Court recently stated, ". . . if, as a matter of law, neither the complaint nor the known extrinsic facts indicate any basis for potential coverage, the duty to defend does not arise in the first instance." (*Scottsdale Ins. Co. v. MV Transportation* (2005) 36 Cal.4th 643, 655 [31 Cal.Rptr.3d 147, 115 P.3d 460].) Thus, CIGA can only avoid liability by demonstrating, as a matter of law, that there was no possibility of coverage for the wrongful eviction claim asserted against plaintiffs.

As we now explain, the issue of coverage in this case is an issue of law turning upon proper construction of the United Pacific policy. Depending on how we construe the relevant policy language, there will either be coverage or there will not. It will be conclusive, one way or the other.

### 3. *Relevant General Principles of Policy Construction*

■ The rules pertaining to contractual interpretation are clearly delineated in published case law, and apply equally to insurance contracts. They

are summarized in *Palmer v. Truck Ins. Exchange* (1999) 21 Cal.4th 1109 [90 Cal.Rptr.2d 647, 988 P.2d 568]: " '[I]nterpretation of an insurance policy is a question of law.' [Citation.] 'While insurance contracts have special features, they are still contracts to which the ordinary rules of contractual interpretation apply.' [Citation.] Thus, 'the mutual intention of the parties at the time the contract is formed governs interpretation.' [Citation.] If possible, we infer this intent solely from the written provisions of the insurance policy. [Citation.] If the policy language 'is clear and explicit, it governs.' [Citation.] [¶] When interpreting a policy provision, we must give its terms their ' "ordinary and popular sense," unless "used by the parties in a technical sense or a special meaning is given to them by usage." ' [Citation.] *We must also interpret these terms 'in context'* [citation], *and give effect 'to every part' of the policy with 'each clause helping to interpret the other.'* [Citations.]" (*Id.* at p. 1115, italics added.)

█ " 'The "clear and explicit" meaning of [policy] provisions, interpreted in their "ordinary and popular sense," unless "used by the parties in a technical sense or a special meaning is given to them by usage" ([Civ. Code], § 1644), controls judicial interpretation. (*Id., § 1638.)' [Citations.]. **(7)** A policy provision will be considered ambiguous when it is capable of two or more constructions, *both of which are reasonable.* [Citation.] *But language in a contract must be interpreted as a whole, and in the circumstances of the case, and cannot be found to be ambiguous in the abstract.*" (*Waller, supra,* 11 Cal.4th at p. 18, italics added.)

█ Our Supreme Court has long followed the "same meaning rule" in the construction of contracts. "Words used in a certain sense in one part of an instrument are deemed to have been used in the same sense in another. [Citations.]" (*Caminetti v. Pac. Mutual L. Ins. Co.* (1943) 22 Cal.2d 344, 358 [139 P.2d 908]; see also *E.M.M.I. Inc. v. Zurich American Ins. Co.* (2004) 32 Cal.4th 465, 475 [9 Cal.Rptr.3d 701, 84 P.3d 385].) Similarly, while most words, when considered in isolation, may have more than one definition or usage, in construing a contract the court's function is not merely to import all of the possible definitions or even the broadest definition, but to glean the meaning of the words *from the context and usage of the words in the contract itself.* (*Fire Ins. Exchange v. Superior Court* (2004) 116 Cal.App.4th 446, 454 [10 Cal.Rptr.3d 617].)

Put another way, it is not a court's function to select a particular definition of a single word and apply it without regard to other language in the policy. (*Reserve Insurance Co. v. Pisciotta* (1982) 30 Cal.3d 800, 808 [180 Cal.Rptr. 628, 640 P.2d 764].) " 'Ambiguity is not necessarily to be found in the fact that a word or phrase isolated from its context is susceptible of more than one meaning.' [Citation.]" (*Castro v. Fireman's Fund American Life Ins. Co.*

(1988) 206 Cal.App.3d 1114, 1120 [253 Cal.Rptr. 833].) As we have already stated, the critical principle is that an insurance policy must be interpreted *as a whole and in context.* (*Waller, supra,* 11 Cal.4th at p. 18.)

### 4. *The Word "Person" As Used in the United Pacific Policy Necessarily Refers to a Natural Person*

United Pacific promised coverage for a claim arising out of a "wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of: [¶] (a) a room; [¶] (b) a dwelling; or [¶] (c) premises; [¶] that *a person* occupies by or on behalf of its owner, landlord or lessor . . . ." (Italics added.) Plaintiffs argued (and the trial court held) that the word "person" as used in the quoted provision must be construed to include "organization" such as the corporate claimant (POS) in the underlying actions. But as already noted, we must read the quoted policy language not in isolation but in the context of the *entire* policy. An examination of how the isolated word "person" is used throughout the policy (including even in another provision of the personal injury clause) demonstrates that it is *consistently* used to refer *only* to natural persons. (See fn. 13, *post.*) Other types of legal entities (i.e., corporations, partnerships or joint ventures) on the other hand, are clearly characterized as "organizations."

As the policy repeatedly uses the words "person" and "organization" separately and distinctly, these two words must be accorded their separate and distinct meanings. Even within the definition of "personal injury" itself, the word "person" without the word "organization" is used in connection with the offenses of wrongful eviction and invasion of right of privacy; but the term "person or organization" is used with respect to the defamation offenses where coverage is expressly extended to include a claim by an organizational entity. It is stipulated that the tenant, POS, was a corporation, and thus, it was an "organization." Since the policy only provided "personal injury" coverage for "wrongful eviction from . . . [a room, dwelling or premises]; that *a person* occupies . . ." (italics added), it would seem that such coverage should not extend to the wrongful eviction of "organizations" such as POS.[13]

---

[13] We find to be both instructive and persuasive the argument and policy analysis that CIGA has provided in its opening brief. It demonstrates that the United Pacific policy, when it otherwise used the word "person" in isolation from the word organization, clearly and consistently referred *only* to a natural person: "The words 'person', 'persons,' and 'person's' appear in isolation [some twenty-eight (28) times, excluding the disputed language,] throughout the policy in contexts obviously referring only to natural persons. By way of example, the first page of the CGL Coverage Part sets forth exclusions for 'Liquor Liability. . . .' The exclusion addresses liability by reason of '(1) causing or contributing to the intoxication of any person; (2) the furnishing of alcoholic beverages to a person . . .' . . . [']Person['] in this context clearly and unequivocally means a natural person. An entity cannot drink or become intoxicated. Similarly, the policy's exclusions under Coverage C. Medical Payments for bodily

We are persuaded that the words "person" and "organization," as used in the United Pacific policy, must be given separate meanings. Any other interpretation would be unreasonable given the repeated usage of those terms in contexts where there is no doubt as to the meaning intended. It is clear that what plaintiffs seek to do is have us construe the word "person" as used in the wrongful eviction clause to include "organization" even though they concede that in *all* other places where the word "person" is used in the policy it means a *natural* person.

This contention runs contrary to existing law. Quite apart from its "same meaning" rule of construction, discussed, *ante*, the Supreme Court has expressly adopted a clear approach to the definition of separate words separately utilized in an insurance policy. For example, in *Foster-Gardner, Inc. v. National Union Fire Ins. Co.* (1998) 18 Cal.4th 857 [77 Cal.Rptr.2d 107, 959 P.2d 265] (*Foster-Gardner*), the court held that where a policy used the words "suit" and "claim" separately, they must have separate meanings. As the court stated, "[m]oreover, the policies do not treat the terms 'suit' and 'claim' as interchangeable, but consistently treat them separately. [Citation.]

---

injury provide that the carrier 'will not pay expenses for **bodily injury**: [¶] . . . [¶] (b) to a *person* hired to do work for or on behalf of any insured or a tenant of any insured. [¶] (c) to a *person* injured on that part of [a premises the named insureds own, occupy or rent] that the person normally occupies. [¶] (d) to a *person*, whether or not an employee of any insured. . . . [¶] (e) to a *person* injured while taking part in, supervising, or instructing any physical sport. . . .' . . . [¶] The word 'person' is used because these provisions can only apply to natural persons; i.e., only natural persons can suffer 'bodily injury' covered by Coverage C. Medical Payments. [¶] The usage of 'person' throughout the policy is similarly consistent in referring to only natural persons. Besides **Coverage A. Bodily Injury and Property Damage** . . . and **Coverage C. Medical Payments** . . . noted above, 'person' also appears in **Section II—Who Is an Insured** (e.g. any person is an insured while driving mobile equipment on a public highway with the insured's permission) . . . , **Section III—Limits of Insurance** (' . . . the "Medical Expense Limit" is the most we will pay under Coverage C. Medical Payments because of bodily injury sustained by any one person.') . . . , and **Section IV—General Liability Conditions** (e.g. an insured's obligation to help the carrier 'get the names and addresses of injured persons and witnesses') . . . [¶] In addition to the examples cited above where 'person' can only mean a natural person, an examination of the uses of the term 'person' in the **Definitions** section of the policy demonstrates a consistent use of the term 'person' to refer only to a natural person. 'Person' is used in the definitions of '**Advertising Injury**,' '**Bodily Injury**,' '**Coverage Territory**,' '**Executive Officer**', '**Personal Injury**', and '**Temporary Worker**'. In the definition of Advertising Injury, the definition includes 'oral or written publication of material that violates a *person's* right of privacy.' . . . The definition of 'Bodily Injury' addresses 'bodily injury, sickness or disease sustained by a *person*. . . . The definition of 'Coverage Territory,' which is primarily defined as the United States, Puerto Rico and Canada, is narrowly extended to all parts of the world only if 'the activities of a *person* whose home is the [United States, Puerto Rico and Canada], but is away for a short time on your business.' . . . Similarly, an 'Executive Officer' is 'only a *person* holding any of the officer positions created by your charter, constitution or by-laws' . . . (i.e. the human component of some organizations.) . . . A 'Temporary Worker' is 'a *person* who is furnished to **you** to substitute for a permanent **employee** on leave or to meet seasonal or short-term workload conditions." (Original boldface; italics added.)

*This careful separation indicates that the insurers' differing rights and obligations with respect to 'suits' and 'claims' were deliberately and intentionally articulated in the policies.* [Citation.]" (*Id.* at p. 880, italics added; see also *E.M.M.I. Inc. v. Zurich American Ins. Co., supra,* 32 Cal.4th at p. 475 ["Significantly, the word 'theft' is used both in the vehicle theft exclusion and its exception. Despite this, Zurich would have us find that the vehicle theft exclusion applies generally to all thefts from a vehicle, while the exception applies only to the greater crime of robbery. Accepting Zurich's interpretation would require that we give different meanings to the same term used in the same policy paragraph. This would run afoul of the rule of contract interpretation that the same word used in an instrument is generally given the same meaning unless the policy indicates otherwise. [Citations.]"].)

■ The conclusion that "person" as used in the context of the offense of "wrongful eviction" refers to only a natural person is further supported by noting the places from which the eviction must take place are places where people live. The relationship between eviction and the intent that it be from a place where *people live* is consistent with the places listed in the definition of "personal injury": "wrongful eviction from . . . a room, . . . a dwelling; or . . . a premises." Under the principle of *ejusdem generis,* the general word "premises" should be defined in the same class or nature of the more specific words that precede it. (See *Waranch v. Gulf Insurance Co.* (1990) 218 Cal.App.3d 356, 360–361 [266 Cal.Rptr. 827] ["private occupancy," when grouped with "wrongful entry" and "wrongful eviction," could only mean occupancy of real property, not a motor vehicle]; *Martin Marietta Corp. v. Insurance Co. of North America* (1995) 40 Cal.App.4th 1113, 1133 [47 Cal.Rptr.2d 670] [the policy term " '[o]ther invasion of the right of private occupancy' " must be read as similar to terms "eviction" and "trespass" appearing in the same coverage phrase].) A "room" is a "a partitioned part of the inside of a building; *esp:* such a part used as a lodging." A "dwelling" is "a shelter (as a house or building) in which people live." A "premise" is "a building or part of a building usu[ally] with its appurtenances (as grounds)." (Webster's 9th New Collegiate Dict. (1986) pp. 1023, 390, 928.) Obviously, the word "premises" is the more general of the three terms, but, as noted, settled rules of construction compel us to conclude that it is of the same *class* as the other two. (See also *Truck Ins. Exchange v. Bennett* (1997) 53 Cal.App.4th 75, 85–86 [61 Cal.Rptr.2d 497].)

■ Moreover, if, as was done by the trial court, "person" is interpreted to include organizations, the word "organization" in the oft-repeated phrase "person or organization" becomes redundant and surplusage. This is contrary to well established rules of construction. It is a very fundamental principle that policy language be so construed as to give effect to every term. (See, e.g., *Fireman's Fund Ins. Co. v. Superior Court* (1997) 65 Cal.App.4th 1205, 1217–1218 [78 Cal.Rptr.2d 418] [a court " 'must strive to give every term

meaning unless to do so would render the term inconsistent or contradictory' "]; *Martin Marietta Corp. v. Insurance Co. of North America, supra,* 40 Cal.App.4th at p. 1127 [quoting *Union Oil Co. v. International Ins. Co.* (1995) 37 Cal.App.4th 930, 935 [44 Cal.Rptr.2d 4], and noting that "an interpretation that gives effect to every clause is preferred over one that would render other policy terms meaningless"]; *AIU Ins. Co. v. Superior Court* (1990) 51 Cal.3d 807, 826–827 [274 Cal.Rptr. 820, 799 P.2d 1253], [construing the phrase "damages the insured is legally obligated to pay" and declining to adopt interpretation of the term "damage" that would render the phrase "legally obligated to pay" moot].)

■ The policy discretely uses the term "organization" 12 times and the phrase "person or organization" 20 times. The trial court's ruling effectively renders such usage in the policy superfluous and meaningless, or worse, creates an ambiguity where none otherwise existed. The problem created by construing the terms "person" and "organization" as interchangeable is no more evident than in the clause relating to the offense of libel or slander *that is part of the policy definition of "Personal Injury."* If the word "organization" is redundant and therefore unnecessary, then the offense of libel and slander is effectively rewritten to read: "oral or written publication of material that slanders or libels a person or disparages a person's goods, products or services." To do so, however, creates an ambiguity as to whether the policy covers commercial slander as well as personal libel and slander. These are different offenses. As written, the policy clearly covers both offenses. An interpretation of the policy that creates an ambiguity where none existed by rendering words redundant or superfluous violates all rules of construction. (*ACL Technologies, Inc. v. Northbrook Property & Casualty Ins. Co.* (1993) 17 Cal.App.4th 1773, 1785, 1786 [22 Cal.Rptr.2d 206].)

If the term "organization" is not redundant or surplusage, then to interpret "person" as the trial court has done to include an organization in the context of the offense of wrongful eviction, while recognizing that "person" within the phrase "person or organization" in the libel and slander clause must refer only to natural persons, is to confer on the word "person" two separate and distinct meanings within the same "personal injury" coverage clause. Only by giving the word "person" its plain and ordinary meaning as referring to a natural person that is distinct from the word "organization" can a violation of fundamental construction rules be avoided.

■ In adopting the Insurance Code's statutory definition of "person" as the basis of its ruling, the trial court failed to recognize that the definitional language of Insurance Code, section 19 was intended to govern the construction and interpretation of the Insurance Code. (Ins. Code, § 5.) It provided no authority for the trial court to ignore its obligation to apply the settled rules of

construction that we have discussed, *ante*. Indeed, what the trial court did, in effect, was to confer on the word "person" a technical meaning which should not be done *unless* it is clear *from the policy* that this was intended. (*Armstrong World Industries, Inc. v. Aetna Casualty & Surety Co.* (1996) 45 Cal.App.4th 1, 69 [52 Cal.Rptr.2d 690].) In this case, there clearly was no such intent. Indeed, the policy language demonstrated that the intent was otherwise. As the Supreme Court emphasized in *Foster-Gardner, supra*, 18 Cal.4th 857, when an insurance policy consistently treats separately two different words, it indicates that the insurer's "differing rights and obligations . . . *were deliberately and intentionally articulated . . . .*" (*Id.* at p. 880, italics added.)

The United Pacific policy did not contain policy language that was written specifically for Mirpad, such that Mirpad could have had an objectively reasonable expectation that the policy would afford coverage for the alleged wrongful eviction of corporate tenants. In interpreting the policy, there is no principled basis for the court to import into the policy a technical statutory meaning of the common word "person." Rather, as illustrated, *ante*, reading the words "person" and "organization" as used in the policy as a whole, affording these words their ordinary, layperson meaning, mandates a conclusion that "person" as used in the definition of "Personal Injury" relating to wrongful eviction, *like every other use of the word "person" throughout the policy*, means a natural person.

 This case presents a paradigmatic example of the now well established principle that a court, in determining the plain meaning of policy language, must not only interpret that language in its "ordinary and popular sense," but also in the *context of its usage* in the policy itself. The word "person" can, as plaintiffs' argument emphasizes, have many different meanings, depending on circumstances and context of usage.[14] But, as used in the United Pacific policy (when the policy is read as a whole), it can only mean a *natural* person. Mirpad could not have had an *objectively reasonable* expectation to the contrary. *As used in the policy*, the meaning of the word "person" was "explicit and clear" and free from ambiguity. Therefore, "person" cannot include an organization (e.g., a corporation). The United Pacific policy did not afford coverage to Mirpad for the offense of wrongful

---

[14] While a layperson would most likely think the word "person" referred to a *natural* person, it is true that in law, the word can also mean a corporation or other legal entity. For example, the National Labor Relations Act (29 U.S.C. § 152(1)), the Bankruptcy Act (11 U.S.C. § 101(41)), the Clayton Act (15 U.S.C. § 12(a)), the False Claims Act (31 U.S.C. § 3729; see *Cook County v. United States ex rel. Chandler* (2003) 538 U.S. 119, 125 [155 L.Ed.2d 247, 123 S.Ct. 1239]); and the Uniform Probate Code (§ 1-201(34)) define or otherwise treat corporate or other legal entities as "persons." Several California statutes do likewise. (See, e.g., Ins. Code, § 19; Corp. Code, § 18; Gov. Code, § 17; and Bus. & Prof. Code, § 7025.)

eviction of POS. The trial court erred in concluding otherwise. CIGA's motion for judgment on the pleadings should have been granted.[15]

## *DISPOSITION*

The judgment is reversed and the matter is remanded to the trial court with directions to vacate its order granting plaintiffs' motion for a judgment on the pleadings and to enter a new and different order granting CIGA's motion and to thereafter enter judgment in CIGA's favor. CIGA shall recover its costs on appeal.

Klein, P. J., and Aldrich, J., concurred.

A petition for a rehearing was denied October 5, 2005, and the petition of plaintiffs and appellants for review by the Supreme Court was denied September 21, 2005.

---

[15] We summarily reject plaintiffs' argument that even if coverage for the personal injury offense under the United Pacific policy is properly limited to the claim of a *natural* person, it is still entitled to recover. Plaintiffs note that since POS was locked out of the premises, all of its employees were likewise "evicted." Plaintiffs argue that a corporation cannot be evicted without affecting *natural* persons. This argument has no merit for at least two reasons. First, if the policy phrase "that a person occupies" included the *people* that make up a legal entity, there would be no need to use the word "person" at all. The policy could just state "eviction from a premises that is occupied." Second, employees of a corporate lessee have no *right* of occupancy, as a matter of law. They would thus have no legal basis for a claim of wrongful eviction. (*Zelda, Inc. v. Northland Ins. Co.* (1997) 56 Cal.App.4th 1252, 1264 [66 Cal.Rptr.2d 356].) They would only be entitled to enter upon, and remain at, the premises at the invitation and sufferance of their corporate employer lessee who actually owns the possessory interest. Whatever the nature of Mirpad's alleged wrongful conduct, it could not constitute a "wrongful eviction" as to the employees of POS. Plaintiffs cite us to no authority holding otherwise. This analysis also disposes of the argument that the second action (i.e., the *MacDonald* action), nominally filed by POS's founder, president and chief executive officer, represented the assertion of claim by a "person." That action asserted a claim owned by POS, not by its officers or shareholders.