[No. B194996. Second Dist., Div. Three. Nov. 20, 2007.]

THE BOEING COMPANY, Plaintiff and Appellant, v.
CONTINENTAL CASUALTY COMPANY, Defendant and Respondent.

COUNSEL

Hatton, Petrie & Stackler and Arthur R. Petrie II for Plaintiff and Appellant.

Berger Kahn, Lance A. Labelle and Richard Wm. Zevnik for Defendant and Respondent.

OPINION

KLEIN, P. J.—Plaintiff and appellant The Boeing Company (Boeing) appeals a judgment of dismissal following the sustaining without leave of a demurrer interposed by defendant and respondent Continental Casualty Company (Continental) to Boeing's first amended complaint.

Boeing contends it was entitled to a defense by Continental in an underlying action because it qualified as an additional insured under a commercial general liability policy issued by Continental.

We conclude Boeing is incapable of alleging status as an additional insured and therefore affirm the judgment of dismissal.

## FACTUAL AND PROCEDURAL BACKGROUND

1. *Events leading up to the instant lawsuit.*

Christmas in April USA (CIA) is a nonprofit corporation based in Washington, D.C. CIA enlists volunteers to repair and rehabilitate the homes of low-income, elderly and disadvantaged persons. CIA solicits companies such as Boeing to encourage its employees to volunteer for reconstruction projects.

On April 28, 2001, Todd Black (Black), an employee of California State University at Long Beach (CSULB), allegedly was injured while working as a volunteer on a CIA project at the home of Sam and Annie Nichols (Nichols) in Long Beach. On April 24, 2002, Black filed suit against Boeing, CSULB and Nichols (*Black v. Boeing*). As against Boeing, Black pled causes of action for negligence, product liability and breach of implied warranty. Black asserted Boeing was a joint venturer with CSULB and CIA on the Nichols

project, his work at the Nichols home was under the direction and supervision of Boeing and Boeing supplied him with a defective step stool.

Boeing embarked on a search for insurance coverage. It learned that CIA was insured under Continental policy No. C1 77636924, which policy had a limit of $1 million per occurrence. On March 17, 2003, Boeing tendered its defense in *Black* to Continental.

On April 24, 2003, Continental declined the tender in a letter which stated in relevant part: "[Continental] insured [CIA] under the above-referenced policy, however, this policy does not identify [Boeing] as an additional insured. We have confirmed with our insured that they did not have a legal requirement to name [Boeing] as an additional insured nor did [Boeing] request to be added as an additional insured on [CIA's] policy. . . . [¶] We have also confirmed that no contract exists as between your client and our insured. At this time, [Continental] respectfully rejects your request to defend and indemnify [Boeing]."

Boeing defended the *Black* action and obtained summary judgment on August 4, 2003, on various grounds, including: Black's factually devoid discovery responses; lack of evidence that Boeing had entered into a joint venture with CSULB on the Nichols project; lack of evidence that Boeing employees at the Nichols home were working within the course and scope of their Boeing employment; lack of evidence that Boeing is engaged in the manufacture, marketing or sale of step stools, that Boeing is a merchant of step stools, or that Boeing knew or should have known of a defect in the subject step stool; and the Volunteer Protection Act of 1997 (42 U.S.C. § 14501 et seq.) precluded Boeing's liability for the acts or omissions of any of its employees at the Nichols home.

Black appealed. His appeal was later dismissed.

Boeing spent $108,744.41 defending Black's claims.

2. *Boeing sues Continental for its defense costs.*

a. *Boeing's pleadings.*

On January 19, 2006, Boeing filed suit against Continental to recover its defense costs in the Black action.

The operative first amended complaint, filed April 18, 2006, alleged causes of action for breach of contract, breach of the implied covenant of good faith and fair dealing and declaratory relief.

Boeing's theory it was an additional insured under CIA's Continental policy was based on the language of the following endorsement: "The following are additional insureds: [¶] . . . [¶] 3. Any person, (other than the named insured, or any employee of the named insured) or an organization while acting as any agent for, or on behalf of the named insured, including but not limited to real estate agents, however, such coverage will be granted only on written request of the insured and for such limits as are afforded by this policy."

### b. *Continental's demurrer.*

On May 11, 2006, Continental demurred to the first amended complaint. Citing the language of the additional insured endorsement, Continental contended Boeing can qualify as an additional insured only if Boeing can establish that the insured, i.e., CIA, made a written request that additional insured coverage be extended to Boeing, and in the absence of any "allegation anywhere that any insured requested Continental provide additional insured coverage for Boeing, Boeing did not allege sufficient facts to establish that it was an additional insured."

### c. *Boeing's opposition papers.*

Boeing disputed Continental's interpretation that the policy required CIA to make a written request for coverage in advance of a loss, contending such an interpretation "is absurd. It would require [CIA] to identify each of hundreds of volunteers by name, and to transmit a written request to Continental that each of those volunteers be added to Continental's policy as an additional insured before those volunteers go to work.[1] [¶] Continental's policy . . . says no such thing. Had Continental wanted its policy to place such a ridiculously burdensome requirement on [CIA], it could have stated that requirement in clear and unambiguous language. [¶] More important, Continental's position renders the coverage provided in exchange for a

---

[1] Boeing's concern that "hundreds of volunteers" would have to be identified and designated as additional insureds is unfounded. To extend coverage to entities which enlist their employees as volunteers on CIA projects, there would only be a need for a participating entity, such as Boeing, to be named as an additional insured.

$125,000 premium illusory. [CIA] does not itself perform any of the work covered by the Continental policy. As a practical matter, if the policy doesn't cover [CIA's] *volunteers*, it doesn't cover anyone."

Boeing further argued: the potential for coverage under the policy gave rise to a duty to defend; for purposes of demurrer, the insurance contract was subject to Boeing's interpretation that it was an additional insured under the endorsement; even assuming an ambiguity, Boeing's interpretation that it was an additional insured was reasonable and therefore the ambiguity must be resolved in favor of Boeing, as the party opposing the demurrer; any ambiguity must be resolved in Boeing's favor for the additional reason that Boeing's interpretation conforms to CIA's reasonable expectations as to coverage; and Boeing's written demand for additional insured coverage did not violate the known loss rule because the loss occurred on April 28, 2001—44 days after the policy went into effect.

### d. *Trial court's ruling.*

On June 22, 2006, the matter came on for hearing. The trial court sustained Continental's demurrer to the first amended complaint without leave to amend, explaining "whether only the named insured can seek coverage or someone else is entitled to seek coverage under the terms of the policy, coverage has to be requested, and a person or entity has to become an insured before they assert a right to indemnity. [¶] The company has to undertake to insure someone, and then anything which is insured under the policy gives rise to a right to demand indemnity under the policy. [¶] But someone who's never been accepted as an insured, someone who's never asked to become an insured, who becomes injured, can't then write a letter asking to be covered for the injury. That just isn't the way the law contemplates insurance will work, nor do insurance companies contemplate having to be liable for coverage to the world of volunteers, all of whom are unknown until after they've suffered injury."

Boeing filed a timely notice of appeal from the judgment of dismissal.

### CONTENTIONS

Boeing contends: the special endorsement plainly defines insureds and only requires an insured request coverage; in ruling on a demurrer, ambiguous

terms of a contract are construed in favor of the plaintiff; and Boeing's written demand for additional insured coverage does not violate the "known loss rule."

## DISCUSSION

### 1. *Standard of appellate review.*

In determining whether a plaintiff has properly stated a claim for relief, "our standard of review is clear: ' "We treat the demurrer as admitting all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law. [Citation.] We also consider matters which may be judicially noticed." [Citation.] Further, we give the complaint a reasonable interpretation, reading it as a whole and its parts in their context. [Citation.] When a demurrer is sustained, we determine whether the complaint states facts sufficient to constitute a cause of action. [Citation.] And when it is sustained without leave to amend, we decide whether there is a reasonable possibility that the defect can be cured by amendment: if it can be, the trial court has abused its discretion and we reverse; if not, there has been no abuse of discretion and we affirm. [Citations.] The burden of proving such reasonable possibility is squarely on the plaintiff.' [Citations.]" (*Zelig v. County of Los Angeles* (2002) 27 Cal.4th 1112, 1126 [119 Cal.Rptr.2d 709, 45 P.3d 1171].) Our review is de novo. (*Ibid.*)

### 2. *General principles of insurance policy interpretation.*

■ The rules pertaining to contractual interpretation "are clearly delineated in published case law, and apply equally to insurance contracts. They are summarized in *Palmer v. Truck Ins. Exchange* (1999) 21 Cal.4th 1109 [90 Cal.Rptr.2d 647, 988 P.2d 568]: ' "[I]nterpretation of an insurance policy is a question of law." [Citation.] "While insurance contracts have special features, they are still contracts to which the ordinary rules of contractual interpretation apply." [Citation.] Thus, "the mutual intention of the parties at the time the contract is formed governs interpretation." [Citation.] If possible, we infer this intent solely from the written provisions of the insurance policy. [Citation.] If the policy language "is clear and explicit, it governs." [Citation.] [¶] When interpreting a policy provision, we must give its terms their " 'ordinary and popular sense,' unless 'used by the parties in a technical sense or a special meaning is given to them by usage.' " [Citation.] We must also interpret these terms "in context" [citation], and give effect "to every

part" of the policy with "each clause helping to interpret the other." [Citations.]' [Citation.]" (*Mirpad, LLC v. California Ins. Guarantee Assn.* (2005) 132 Cal.App.4th 1058, 1068–1069 [34 Cal.Rptr.3d 136], italics omitted (*Mirpad*).)

■ " ' "The 'clear and explicit' meaning of [policy] provisions, interpreted in their 'ordinary and popular sense,' unless 'used by the parties in a technical sense or a special meaning is given to them by usage' ([Civ. Code], § 1644), controls judicial interpretation. (*Id.*, § 1638.)" [Citations.] . . . A policy provision will be considered ambiguous when it is capable of two or more constructions, both of which are reasonable. [Citation.] But language in a contract must be interpreted as a whole, and in the circumstances of the case, and cannot be found to be ambiguous in the abstract.' [Citation.]" (*Mirpad, supra,* 132 Cal.App.4th at p. 1069, italics omitted.)

It is "not a court's function to select a particular definition of a single word and apply it without regard to other language in the policy. [Citation.] ' "Ambiguity is not necessarily to be found in the fact that a word or phrase isolated from its context is susceptible of more than one meaning." [Citation.]' [Citation.] . . . [T]he critical principle is that an insurance policy must be interpreted as a whole and in context. [Citation.]" (*Mirpad, supra,* 132 Cal.App.4th at pp. 1069–1070, italics omitted.)

Guided by these principles, we address the issues presented by this appeal.

3. *As a matter of law, Boeing does not qualify as an additional insured under the policy; no ambiguity exists in that regard.*

As a preliminary matter, Boeing admittedly was not the named insured. CIA, a corporation, is the only person or entity identified in the policy as the "named insured."

Further, section II of the policy, setting forth the policy's "**WHO IS AN INSURED**" provisions, is unavailing to Boeing. Under those provisions, CIA, as a corporation, was an insured, as were its executive officers and directors (with respect to their duties as officers and directors) and its stockholders (only with respect to their liability as stockholders). In addition, pursuant to Section II, the following were also insureds under the policy: CIA's employees for acts within the scope of their employment; any person acting as CIA's real estate manager; any person or organization having custody of CIA's property upon death; and CIA's legal representative upon death—none of which provisions is relevant here.

Boeing's case against Continental stands or falls with the application of the policy's special endorsement for additional insureds. To reiterate, said endorsement provides in relevant part: "The following are additional insureds: [¶] . . . [¶] 3. Any person, (other than the named insured, or any employee of the named insured) or an organization while acting as any agent for, or on behalf of the named insured, including but not limited to real estate agents, however, such coverage will be granted only *on written request of the insured* and for such limits as are afforded by this policy." (Italics added.)

Boeing emphasizes that to trigger coverage for an additional insured, the special endorsement states "the insured," *not* the "named insured," must make a written request to the insurer, and here, it made such a written request to Continental.

We reject Boeing's attempt to create an ambiguity in this regard. As discussed, ambiguity is not necessarily to be found in the fact that a word or phrase isolated from its context is susceptible of more than one meaning; the critical principle is that an insurance policy must be interpreted as a whole and in context. (*Mirpad, supra*, 132 Cal.App.4th at pp. 1069–1070.)

Paragraph B of the policy's Common Policy Conditions (Paragraph B) states in relevant part: "**CHANGES** [¶] This policy contains all the agreements between you and us concerning the insurance afforded. *The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent.*" (Italics added.) Thus, solely CIA, as the named insured, had the authority to request changes to the policy, and with the consent of Continental.

Reading Paragraph B in conjunction with the special endorsement for additional insureds, it is clear that Boeing had no standing to make written request to Continental to be named as an additional insured under the policy.

■ Because Boeing did not qualify as an additional insured under CIA's policy, Continental did not owe Boeing a defense in the *Black* personal injury action. Therefore, the trial court properly sustained Continental's demurrer to Boeing's first amended complaint without leave to amend.

It is unnecessary to address any remaining arguments of the parties.

.

## DISPOSITION

The judgment of dismissal is affirmed. Continental shall recover its costs on appeal.

Croskey, J., and Kitching, J., concurred.